UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON MURPHY,<br><br>        Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>        Defendant. | Case No.: 1:15-cv-00222-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**INTRODUCTION**

Plaintiff Jason Murphy ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.

The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards.  Accordingly, this Court affirms the agency's determination to deny benefits.

///

///

# FACTS AND PRIOR PROCEEDINGS

On October 17, 2012, Plaintiff filed an application for supplemental security income. AR 152-58.[1] Plaintiff alleged that he became disabled on January 25, 2012, due to a heart attack, five stents in his heart and asthma. AR 168-79. Plaintiff's application was denied initially and on reconsideration. AR 70-74, 78-82. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Trevor Skarda held a hearing on October 22, 2013, and issued an order denying benefits on November 14, 2013. AR 7-17, 22-45. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1- 3, 138, 140. This appeal followed.

**Hearing Testimony**

The ALJ held a hearing on October 22, 2013, in Stockton, California. AR 22-45. Plaintiff appeared and testified. He was represented by attorney Negin Mohajeri. AR 24, 129. Impartial Vocational Expert ("VE") Lorian Ink Hyatt also testified. AR 24.

In response to questioning from his counsel, Plaintiff testified that he currently builds and repairs bicycles and then sells them on Craigslist. He is not making more than $1,000 per month or working 40 hours per week. He estimated working three hours a month and selling two or three bikes a month. He is not constantly working to find bikes to fix. AR 28-30.

Plaintiff reported that he last had a full-time position in 2005 as a security guard. He did not work from 2005 to January 2012 because of a family situation involving his nephew, who was born premature and drug addicted. Plaintiff was taking care of the baby. AR 31-32. Since his heart attack in January 2012, Plaintiff believed that his constant fatigue would keep him from working, and he has a hard time concentrating. AR 32-33.

Plaintiff sees his cardiologist, Dr. Do, every three to four months. In August 2012, Plaintiff's doctor thought that his medications were making him tired, so he changed the medications. Plaintiff did not notice any improvement in his energy level or fatigue even with the change in medication.

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff last saw his doctor in April before the hearing and reported that nothing had changed. AR 33-34.

When questioned about passing out, Plaintiff testified that he had an episode about three and a half months before the hearing. Plaintiff described dizziness, light-headedness and hot and cold flashes. He did not know if he passed out. AR 34-35.

When asked about his daily activities, Plaintiff testified that he watches TV and tries to do things outside, like yard work. Plaintiff also works on bikes. Some days he is more fatigued than others, and he naps or sleeps between three and six hours a day. AR 35-36.

When asked about his physical condition, Plaintiff testified that he suffers from asthma, but "[f]or the most part it's okay." AR 37. Plaintiff has days that he wheezes a lot mainly due to dust in the air and allergies. Plaintiff also admitted to smoking between four or five cigarettes a day. Both of his doctors told him that he needs to quit. AR 37-38.

When asked about his mental condition, Plaintiff testified that he was having issues with his dad. He recently started seeing a counselor because his emotions "were running a little weird." AR 38. Plaintiff explained that his emotions included lack of caring and being depressed about having a lack of energy. AR 38.

In response to questioning by the ALJ, Plaintiff testified that he does not have a driver's license and has not driven in the last two years. He sometimes cooks, but does not grocery shop very often. He will put dishes in the dishwasher, but will not do laundry very often. His father's girlfriend does most of the cleaning. Plaintiff helps with taking care of his nephew. Whenever his nephew is not in school, Plaintiff is outside watching him play with his friends. AR 39-40.

Plaintiff reported that he has never had any problems with drugs or alcohol. He also does not have any new side effects from his medications. He just has fatigue and a constant lack of energy. He does not take any antidepressant medication. AR 40.

Following Plaintiff's testimony, the ALJ elicited testimony from the vocational expert ("VE") Lorian Hyatt. AR 41. The VE testified that Plaintiff's past work was classified as security guard. AR 42. The ALJ also asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to contemplate a person of Plaintiff's age education and work experience limited to light work.

This individual must avoid concentrated exposure to pulmonary irritants, such as fumes, odors, dusts, gases and poorly ventilated areas. The VE testified that this person could perform Plaintiff's past work as a security guard. AR 42.

For the second hypothetical, the ALJ asked the VE to assume the person was limited to sedentary work, may never climb ladders, ropes or scaffolds and must avoid concentrated exposure to pulmonary irritants and concentrated exposure to operation or control of dangerous moving machinery and unprotected heights. The VE testified that this person could not perform Plaintiff's past work, but there would be other jobs for this person, such as interviewer and order clerk. AR 42-43. If this person also was limited to simple, routine, repetitive tasks, this would not change the VE's response. If this person were limited to never lifting ten pounds, then there would be no work this person could perform. If this person could sit, stand, and walk less than eight hours in an eight-hour day, this would preclude all work. If this person were absent more than two times per month on an ongoing basis, this would preclude all work as well. AR 43.

In response to questioning from Plaintiff's counsel, the VE testified that if a person had to take up to 15 minute break every two hours, it would preclude all work. The VE confirmed that three breaks are typically permitted by employers, but any more than that would not be acceptable. AR 44.

**Medical Record**

The entire medical record was reviewed by the Court. AR 227-418. The relevant medical evidence, summarized here, will be referenced below as necessary to this Court's decision.

On January 25, 2012, Plaintiff presented to the hospital with a myocardial infarction. Plaintiff received five drug-eluting stents and was discharged on January 28, 2012. AR 227-28.

Plaintiff received follow-up treatment with Dr. Peter Gaines at the Paradise Medical Office in February, March, May and December 2012. AR 268-81, 297-306.

On March 7, 2012, Plaintiff presented to Dr. Dat Do at Valley Heart Associates for a post-hospital follow-up visit. Since his hospital discharge, Plaintiff was noted to be doing well without chest pain or shortness of breath. Plaintiff was compliant with medication, and was noted to be active, performing hard labored work regularly. Plaintiff was encouraged to exercise daily for at least 30 minutes. Dr. Do discussed the importance of tobacco cessation. AR 263-65.

On August 30, 2012, Plaintiff sought follow-up treatment with Dr. Do. Although Plaintiff had been stable since the last office visit, and he denied having chest pain, Plaintiff complained of shortness of breath with walking 2-3 blocks and feeling easily fatigued. Plaintiff was noted to be active, but not exercising regularly. He still smoked about 5 cigarettes per day. Dr. Do suspected that Plaintiff's fatigue might be due to medication, and switched him from metoprolol to a selective beta-blocker. Dr. Do also noted that since his myocardial infarction, Plaintiff had not been feeling well enough to perform hard labored jobs. Dr. Do thought it was reasonable for Plaintiff to file for disability. Dr. Do again encouraged Plaintiff to exercise daily and discussed the importance of tobacco cessation. AR 287-89.

On October 29, 2012, Dr. Do completed a Residual Functional Capacity Questionnaire form. Dr. Do diagnosed Plaintiff with coronary artery disease with a fair prognosis. Plaintiff's symptoms included shortness of breath with walking 2-3 blocks and fatigue from taking heart medication. Dr. Do indicated that Plaintiff symptoms were severe enough to interfere frequently with the attention and concentration required to perform simple work-related tasks. Plaintiff was taking metoprolol, which could cause fatigue and dizziness. Dr. Do opined that Plaintiff would need to recline or lie down during a hypothetical 8-hour workday in excess of the typical 15-minute break in the morning, the 30-60 minute lunch, and the typical 15-minute break in the afternoon. Dr. Do further opined that Plaintiff could walk less than one block without rest or significant pain. Plaintiff could sit 30 minutes at one time and stand/walk 30 minutes at one time. He could sit four hours in an 8-hour day and stand/walk two hours in an 8-hour day. Plaintiff would need a job that permitted shifting positions at will. He also would need to take unscheduled breaks every two hours for 15 minutes each. Dr. Do believed Plaintiff could lift and carry less than 10 pounds occasionally and could never lift 10, 20 or 50 pounds. Dr. Do estimated that Plaintiff likely would be absent from work more than four times a month. AR 313-14.

On December 5, 2012, Plaintiff was admitted to the hospital due to a syncopal episode preceded by dizziness and hot flashes. The most likely cause of his syncopal episode was vasovagal. Plaintiff underwent a psych consult after expressing increasing anxiety and stress frustration with his relationship with his father and multiple stressors at home. AR 338-90. Anika Godhwani, D.O.,

diagnosed Plaintiff with major depressive disorder, which likely began after his myocardial infarction. Plaintiff was noted to have irritable mood and excessive sleepiness. It was recommended that Plaintiff try exercises and Cymbalta. If his symptoms did not improve after a month or two, it was recommended that Risperdal be added, and that his metoprolol heart medication be changed to help with fatigue. Additionally, it was recommended that the doctor speak with Plaintiff's father to explain that Plaintiff had limitations after his heart attack. Dr. Godhwani also assessed psychological disorder secondary to drug side effect plus/minus decreased cardiac output. AR 344-46. Plaintiff was discharged from the hospital on December 6, 2012. AR 338-90.

On December 20, 2012, Plaintiff sought follow-up treatment with Dr. Do. Plaintiff was active, but did not exercise regularly, and continued to smoke a few cigarettes a day. Dr. Do again encouraged Plaintiff to exercise daily. He also discussed the importance of tobacco cessation. AR 309-11.

On April 3, 2013, Plaintiff sought follow-up treatment with Dr. Do. Plaintiff had been stable in the last 3-4 months, but his shortness of breath had worsened and he was having symptoms with walking a block. Plaintiff had not been active due to shortness of breath. He also had not quit tobacco. Plaintiff had class II-III heart failure symptoms. Plaintiff also reported feeling depressed and wanted to see a psychologist. Dr. Do diagnosed Plaintiff with coronary artery disease, hyperlipidemia, COPD with current tobacco abuse and depression. Dr. Do noted that because of having dyspnea with minimal exertion, Plaintiff had not been able to find a job that was suitable for him. Dr. Do supported Plaintiff's decision to apply for disability. AR 321-24.

On July 1, 2013, Dr. Do completed a Residual Functional Capacity Questionnaire form. Dr. Do diagnosed Plaintiff with coronary artery disease status post myocardial infarction with a fair prognosis. Plaintiff's symptoms included shortness of breath with walking a block. Dr. Do indicated that Plaintiff's symptoms were severe enough to interfere frequently with the attention and concentration required to perform simple work-related tasks. Plaintiff's medications caused fatigue and dizziness. Dr. Do opined that Plaintiff would need to recline or lie down during a hypothetical 8-hour workday in excess of the typical 15-minute break in the morning, the 30-60 minute lunch, and the typical 15-minute break in the afternoon. Dr. Do further opined that Plaintiff could walk one block

without rest or significant pain.  Plaintiff could sit 30 minutes at one time and stand/walk 15 minutes at one time.  He could sit four hours in an 8-hour day and stand/walk two hours in an 8-hour day.  Plaintiff would need a job that permitted shifting positions at will.  He also would need to take unscheduled breaks every 2 hours for 10 minutes each.  Dr. Do believed Plaintiff could lift and carry less than 10 pounds occasionally and could never lift 10, 20 or 50 pounds.  Dr. Do estimated that Plaintiff likely would be absent from work more than four times a month.  Dr. Do concluded that Plaintiff was not physically capable of working an 8-hour day, 5 days a week on a sustained basis.  AR 401-02.

On August 20, 2013, Dr. Gaines noted that Plaintiff had mild depression.  AR 409.

On September 23, 2013, Plaintiff met with David Sandoval, LCSW, following a referral from Dr. Gaines.  Plaintiff reported no ambition, no energy, stress, anger and problems sleeping.  Plaintiff also indicated that he helped take care of his nephew.  The treatment plan was to get more history.  AR 404.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 7-17.  More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since October 16, 2012, his application date.  AR 12.  Further, the ALJ identified asthma and heart attack/heart disease as severe impairments.  AR 12.   Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments.  AR 12-13.  Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, but could never climb ladders, ropes or scaffolds, should avoid concentrated exposure to pulmonary irritants and should avoid concentrated exposure to hazards, such as operational control of dangerous moving machinery and unprotected heights.  AR 13-16.  The ALJ found that Plaintiff could not perform his past relevant work, but there were other jobs existing in significant numbers in the national economy that Plaintiff could perform.  AR 16-17.  The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act.  AR 17.

///

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Plaintiff contends that the ALJ erred by failing to properly analyze Plaintiff's mental impairments and by according inadequate weight to the opinion of Dr. Do, Plaintiff's treating

cardiologist. Plaintiff also contends that the ALJ's credibility determination and his step five finding are not supported by substantial evidence.

# DISCUSSION[2]

**A. Step Two**

Plaintiff first argues that the ALJ failed to properly analyze Plaintiff's mental impairments at step two of the sequential evaluation. (Doc. 16 at p. 14).

At step two, the ALJ determines whether a claimant has a medically severe impairment or combination of impairments. *Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Id.* at 1290; *see also Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (step-two determination is "merely a threshold determination of whether the claimant is able to perform his past work;" finding a claimant severe at step two "only raises a prima facie case of a disability"). However, an impairment may be found not severe "only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." *Id.* (citation omitted).

Here, the ALJ found Plaintiff's mental impairment non-severe, reasoning as follows:

> The record also mentions complaints of depression. The claimant was treated at Paradise Medical Office Behavioral Health Department on September 26, 2013, for an "initial" consultation. The claimant reported that he has no energy and was emotionally beat. He stated that housework takes him longer than [in] the past. He reported that he lived with his father and helped care for his nephew. He reported that he lacks ambition, energy and is stressed. The claimant reported difficulty sleeping. He reports problems sleeping. He also complained of getting mad at times. The examiner noted that more information would be needed from the claimant. The number of recommended intervals was noted as "to be determined" [Exhibit 14F]. Although the claimant is alleging depression, the record does not contain significant objective evidence to support a severe impairment. In fact, the claimant only recently sought mental care in September 2013. The record does not contain documentation of the claimant's symptoms, corroboration of his allegations by a medically acceptable source, or a report regarding severity by a diagnosing source. For these reasons, the undersigned finds that the claimants' depression is non-severe.

AR 12.

---

[2] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

Plaintiff primarily argues that that the ALJ failed to properly analyze Plaintiff's mental impairment through the psychiatric review technique. At step two of the sequential evaluation, the ALJ is required to determine whether an applicant has a medically determinable mental impairment, rate the degree of functional limitation for four functional areas, determine the severity of the mental impairment (in part based on the degree of functional limitation), and then, if the impairment is severe, proceed to step three of the disability analysis to determine if the impairment meets or equals a specific listed mental disorder. *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011). In this instance, the ALJ's decision did not include explicit application of the psychiatric review technique. Rather, the ALJ considered the lack of medical source statements or medical records regarding the severity of Plaintiff's condition to determine that his depression was non-severe. AR 12. This was not reversible error.

According to the record, Plaintiff was diagnosed with a major depressive disorder and prescribed medications by Anika Godhwani, D.O., (and Grace C. Nadolny, M.D.) on December 5, 2012. However, Dr. Godhwani did not identify any work-related functional limitations resulting from Plaintiff's depression, and attributed any sleepiness or fatigue to Plaintiff's heart-related medications. AR 344-46. Similarly, Dr. Do diagnosed Plaintiff with depression on April 3, 2013, but the treatment records did not identify any allegations or evidence of functional limitations attributable to Plaintiff's depression. AR 321-24. On August 20, 2013, Dr. Gaines also noted that Plaintiff had mild depression, but did not ascribe any functional limitations. AR 409.

Although Plaintiff was diagnosed with depression, this alone is insufficient to warrant a finding of a severe impairment at step two. *See Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir.1997) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)) ("[T]he claimant must show more than the mere presence of a condition or ailment."); *see also Holaday v. Colvin*, No. 2:14-cv-1870-KJN, 2016 WL 880971, at *12 (E.D. Cal. Mar. 8, 2016) ("The mere fact that plaintiff was diagnosed with such conditions is, by itself, insufficient to demonstrate that they were 'severe' for step two purposes."); *Mahan v. Colvin*, 2014 WL 1878915, at *2 (C.D. Cal. May 12, 2014) ("[A] mere diagnosis does not establish a severe impairment."). Here, there is no evidence that Plaintiff's depression had any impact on his ability to work. *See Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (an impairment is not

severe if it is merely a slight abnormality that has no more than a minimal effect on one's ability to do basic work activities). Therefore, the ALJ properly determined that Plaintiff's depression did not represent a severe impairment.

Even if the ALJ did err in evaluating Plaintiff's depression, the Court finds that any such error is harmless because the medical records are devoid of any evidence that Plaintiff's depression imposed any functional work limitations. *See Sanchez v. Colvin*, 2016 WL 3219861, at *8 (C.D. Cal. Jun. 8, 2016) (given lack of any medical source statements or medical records suggesting that Plaintiff had any work-related mental functional limitations, ALJ's failure to find severe mental impairment harmless); *Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir. 2007) (reversible error occurs only when a severe impairment excluded at step two causes functional limitations not accounted for in the RFC.); *see also Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) ("ALJ errors in social security cases are harmless if they are inconsequential to the ultimate nondisability determination"); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where mistake was non-prejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion).

**B. Treating Physician Opinion**

Plaintiff argues that the ALJ had no rational basis for rejecting the opinion of his treating physician, Dr. Dat Do. The Commissioner counters that the ALJ gave sufficient reasons for rejecting Dr. Do's opinion, arguing that the Court should affirm the ALJ's decision to give significant weight to the opinions of the non-examining state agency physicians and to reject the opinion of Plaintiff's treating physician. (Doc. 18 at pp. 9-10).

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.* Where a treating physician's opinion is not contradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's

ultimate conclusions. *Id.* If the treating doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id.* at 830–31. The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

In assigning weight to the opinions of the state agency physicians and Dr. Do, the ALJ reasoned as follows:

> The undersigned has considered the above State agency opinions finding that they are somewhat supportive of the evidence. However, the undersigned gives the claimant the benefit of doubt in restricting him to a sedentary position. Dr. Do's opinion is highly conservative and not supported by his own treatment notes. Dr. Do repeatedly notes "[n]o symptoms concerning for cerebral vascular accident" and "stable." Although the claimant complains of fatigue, he also reports good activities of daily living.

AR 15-16. An ALJ may rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor if he provides "specific and legitimate" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830.

Here, the ALJ proffered specific and legitimate reasons supported by substantial evidence to discount Dr. Do's opinion. First, the ALJ rejected Dr. Do's conservative opinion of Plaintiff's functional limitations because such limitations were not supported by Dr. Do's treatment notes. An ALJ may properly discount a treating physician's opinion that is not supported by the medical record, including his own treatment notes. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (contradiction between treating physician's opinion and his treatment notes constitutes specific and legitimate reason for rejecting treating physician's opinion); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1195 (9th Cir. 2004) (noting that "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, ... or by objective medical findings"); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). As indicated by the ALJ, Dr. Do repeatedly noted that Plaintiff did not have symptoms for a "cerebral vascular accident" and that

Plaintiff was "stable." AR 263-64 ("doing well," "No symptoms concerning for cerebral vascular accident."); 287-89 ("stable," "No symptoms concerning for cerebral vascular accident."); 321-23 ("stable," "No symptoms concerning for cerebral vascular accident."). Dr. Do's examination notes included no other abnormal findings on examination. Although Dr. Do documented medication-induced fatigue on August 30, 2012, Dr. Do changed Plaintiff's medication. Following the change, Dr. Do did not identify symptoms of fatigue in his treatment notes. AR 287-89.

Second, the ALJ discounted Dr. Do's opinion regarding Plaintiff's functional limitations because they conflicted with Plaintiff's reported activities of daily living. An ALJ properly may consider conflicts between a treating physician's opinion and a claimant's daily activities. *See Magallanes v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989) (conflicts between treating physician's opinion and claimant's own testimony properly considered by ALJ in rejecting treating physician's opinion); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (upholding rejection of physician's conclusion that claimant suffered from marked limitations in part on basis that claimant's reported activities of daily living contradicted that conclusion). In this instance, the ALJ considered not only Plaintiff's report that he completes general household chores, but also that he helps care for a minor child, builds and repairs bicycles and sells things on the internet to make money. AR 15.

**C. Credibility**

Plaintiff contends that the ALJ's credibility determination is not supported by substantial evidence. In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Batson*, 359 F.3d at 1196. First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings and provides clear and convincing reasons for doing so. *Id.* The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine

whether the ALJ's conclusion is supported by substantial evidence."). Factors an ALJ may consider include: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the applicant's daily activities. *Smolen*, 80 F.3d at 1284.

At the first step of the analysis, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 14. At the second step, however, the ALJ found that Plaintiff's statements about the intensity, persistence and limiting effects of his symptoms were not entirely credible. In so doing, the ALJ provided clear and convincing reasons for finding Plaintiff not fully credible. AR 14-15.

Initially, the ALJ properly determined that the objective medical evidence did not support Plaintiff's allegations. An ALJ is entitled to consider whether there is a lack of medical evidence to corroborate a claimant's alleged symptoms so long as it is not the only reason for discounting a claimant's credibility. *Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005); *Batson*, 359 F.3d at 1196-97 (ALJ properly relied on objective medical evidence and medical opinions in determining credibility). As discussed above, the ALJ considered Dr. Do's treatment notes indicating Plaintiff had no symptoms concerning for a cerebral vascular accident and was stable. AR 15-16. The ALJ also considered the absence of record evidence regarding limitations from his depression. AR 12.

Additionally, the ALJ properly considered that treatment for Plaintiff's allegedly disabling impairment had been essentially routine and conservative in nature. AR 15. Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (response to conservative treatment undermined claimant's reports regarding disabling nature of pain); *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that are effectively controlled with medication are not disabling). Here, the record reflects that following his receipt of stents, Plaintiff's heart condition was treated with medication, and he was encouraged to exercise and to stop smoking. AR 263-65, 287-89, 309-11, 321-23.

The ALJ also properly considered Plaintiff's activities of daily living to be inconsistent with his alleged limitations. An ALJ's credibility finding may consider a claimant's daily activities which are inconsistent with allegations of disability. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). In this instance, the ALJ considered not only Plaintiff's report that he completed general household chores, such as vacuuming, mopping and cleaning the bathrooms, but also that Plaintiff helped care for a minor child, built and repaired bicycles, sold items on the internet, and walked as often as he could. AR 15, 28-30, 35-36, 39-40, 182. The ALJ reasonably found that these activities were inconsistent with Plaintiff's allegations of total disability. *See Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (claimant's "normal activities of daily living, including cooking, house cleaning, doing laundry, and helping her husband in managing finances" was sufficient explanation for rejecting claimant's credibility); *Thomas*, 278 F.3d at 959 (claimant's ability to perform various household chores such as cooking, laundry, washing dishes and shopping, among other factors, bolstered "the ALJ's negative conclusions about her veracity).

Further, the ALJ properly considered that Plaintiff's work history showed that he worked "only sporadically prior to the alleged disability onset date." AR 15. An ALJ may properly consider a claimant's work history in making a negative credibility determination. *Thomas*, 278 F.3d at 959 (affirming a credibility finding based in part on the fact that the claimant's "work history was spotty, at best, with years of unemployment between jobs, even before she claimed disability in June of 1993"); *Williams v. Colvin*, No. 1:14-cv-0366-BAM, 2015 WL 5546920, at *4 (E.D. Cal. Sept. 18, 2015). Plaintiff testified that he had not worked since 2005, and left his job as a security guard in order to help raise his nephew. AR 31. The ALJ was not precluded from considering the fact that Plaintiff was unemployed for reasons other than his disability. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ properly found claimant's alleged disability not credible based in part on the fact that the claimant left work for economic rather than medical reasons).

Plaintiff correctly notes that the ALJ's credibility determination appears to include statements cut and pasted from another decision regarding use of extremities. (Doc. 16 at p. 21; AR 15). However, this error is not sufficient to undermine the remainder of the ALJ's credibility

determination, which is based on proper reasons supported by substantial evidence. *Batson*, 359 F.3d at 1197 (upholding ALJ's credibility determination even though one reason may have been in error).

### D. Step Five

As a final matter, Plaintiff argues that "due to the ALJ's error at Step 2, his failure to properly incorporate Dr. Do's opinion into the hypothetical question, and his error in determining Plaintiff's credibility as described above, the hypothetical question relied upon was necessarily incomplete." Doc. 16 at p. 22. It is unnecessary to reach this argument because the Court does not find that the ALJ committed reversible error at step two, in the credibility determination, or in evaluating Dr. Do's opinion.

### CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Jason Murphy.

IT IS SO ORDERED.

Dated:     **September 1, 2016**          /s/ *Barbara A. McAuliffe*          
                                                                                UNITED STATES MAGISTRATE JUDGE